UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY LAMONT CANADY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | No.  2:22-cv-00920 CKD SS<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1964, applied on January 10, 2020 for SSI. Administrative Transcript ("AT") 32, 61. He alleged disability beginning August 8, 2008, later amended to the filing date of January 10, 2020. AT 32, 64. Plaintiff alleged he was unable to work due to back and shoulder problems, sciatica, allergies, migraines, and a vitamin deficiency. AT 321. In a decision

dated June 7, 2021, the ALJ determined that plaintiff was not disabled.[1] AT 32-42. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since January 10, 2020, the application date.
>
> 2. The claimant has the following severe impairments: lumbar degenerative disc disease (DDD) with disc bulge and sciatica on the right, and status post labral and right rotator cuff tear.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work except he may use a cane in the left hand (non-

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

> dominant) when walking, can perform no reaching overhead with the right upper extremity (dominant), and can frequently reach with the right arm for other right reaching. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, scaffolds, and can occasionally stoop, kneel, crouch or crawl. The claimant can never work at unprotected heights, and around moving mechanical parts, nor operate a motor vehicle.
>
> 5. The claimant is capable of performing past relevant work as a customer service representative and telemarketer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 6. The claimant has not been under a disability, as defined in the Social Security Act, since January 10, 2020, the date the application was filed.

AT 35-42.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred in discounting plaintiff's statements regarding his subjective symptoms; (2) the ALJ erred in failing to evaluate the opinion of a non-examining State agency doctor; and (3) the ALJ failed to develop the medical opinion evidence and improperly acted as a medical expert.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

    A. Credibility

At the May 2021 telephonic hearing on his claim, plaintiff testified that, from 2006 to 2008, he worked as a customer service representative at a call center. AT 62. Plaintiff resigned because his back pain became so severe that he could not "sit[] at that job for eight, ten hours a day[.]" AT 64-65. In 2018, he worked briefly as a telemarketer, but quit that job because "sitting there for eight hours a day" was too painful for his back. AT 62, 65-66. Plaintiff testified that, if he had a chair with lumbar support, he could "probably sit for two to two and a half hours before I have to get up" and move around. AT 66.

Plaintiff testified that he had a hard time raising his right arm above his head and to the side, though he could lift his left arm up and to the side. AT 68. He testified that he used a cane in his non-dominant left hand to walk, and that he could stand for 15 to 30 minutes at a time. AT 69, 70, 80-81. Plaintiff testified that his average daily pain was a level 7 out of 10, and that he took pain medication and used a portable TENS machine[2]. AT 71, 73. He testified that he suffered from stress-related migraines that required him to lay down in a dark room with earmuffs

---

[2] "Transcutaneous electrical nerve stimulation, known by its acronym TENS, is a modality that uses electric current to activate nerves in order to decrease pain. The TENS unit is a small device . . . [that] utilizes electrodes placed on the skin and which connect to the unit via wires to address pain in a target region." *Source:* https://www.ncbi.nlm.nih.gov/books/NBK537188/ (last visited 6/1/23).

to block the sound, and take migraine medication. AT 73-74.

Based on plaintiff's testimony and the documentary record, the ALJ noted that plaintiff's allegations "include right shoulder pain and soreness, stiffness, and spasms in the back resulting in numbness in the right leg."[3] AT 38. The ALJ found that plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." AT 38.

1. Legal Standard

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d

---

[3] Earlier in his decision, the ALJ found no objective medical evidence supporting a diagnosis for migraines, as "no acceptable medical source on the record listed it as an assessed or diagnosed condition." AT 36. Similarly, as to plaintiff's reported knee pain, the ALJ found that "no provider noted any objective findings to support pain or other limitation" and "[n]one of the medical evidence suggests these reported impairments [i.e., migraines and knee pain] required additional evaluation or intervention. Thus, I find them to be non-medically determinable impairments." AT 36.

1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  When discounting subjective testimony, an ALJ must provide "specific, clear, and convincing *reasons* for doing so." Wade v. Saul, 850 F. App'x 568, 569 (9th Cir. 2021) (emphasis in original), citing Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).  This standard does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony[.]" Lambert, 980 F.3d at 1277.  However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility.  Id. at 1277–78.

2. Discussion

At the first step of the required credibility analysis, the ALJ found objective evidence of medical impairment, noting plaintiff's history of treatment for "lumbar degenerative disc disease (DDD) with disc bulge and sciatica on the right, and status post labral and right rotator cuff tear." AT 38.  In 2020, the year of the alleged onset date, plaintiff underwent lumbar nerve ablation "due to reports of chronic back pain and stiffness."  AT 39 (record citation omitted).  An October 2020 MRI "revealed substantive multi-level issues to include moderate to severe stenosis, disc bulging, and spondylolisthesis," and plaintiff began physical therapy in December 2020.  AT 39 (record citations omitted).  The ALJ concluded that these and other factors warranted an RFC of "sedentary exertion, with need of a cane for walking, and generally no more than occasional posturals, with no hard climbing."  AT 39; see AT 37-38 (assessed RFC).

As defendant points out, the RFC reflects plaintiff's subjective statements to some degree. Consistent with plaintiff's testimony, the assessed limitations include the use of a left-hand cane for walking and no overhead reaching with the right extremity. A closer question is whether the RFC is consistent with plaintiff's 2021 testimony that he could sit for two-hour intervals and stand for up to thirty minutes.

Under 20 C.F.R. § 404.1567(a), sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking

and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."[4] The Ninth Circuit has held that, "[i]n a work environment requiring sedentary work, the Social Security Rules require necessary sitting as the ability to do such for six to eight hours a day." Vertigan v. Halter, 260 F.3d 1044, 1052 (9th Cir. 2001), citing SSR 83–10. "While some sedentary jobs may require some walking and/or standing, others may not require any. Thus, to be physically able to work the full range of sedentary jobs, the worker must be able to sit through most or all of an eight hour day." Tackett v. Apfel, 180 F.3d 1094, 1103 (9th Cir. 1999).

Here, the vocational expert (VE) testified that a person limited to sedentary work, along with the other limits in plaintiff's RFC, would be able to perform plaintiff's past job as a telemarketer. AT 82-83. This was the same job plaintiff quit in 2018, testifying that he was unable to sit for the amount of time required, which he described as "eight hours a day." By finding plaintiff able to perform the same sedentary jobs he testified he could not perform due to back pain, the ALJ discounted plaintiff's testimony to some unspecified degree. On the other hand, the ALJ apparently accepted plaintiff's testimony that, "if he had a chair with lumbar support, he could sit for two and a half hours before needing to stand[.]" AT 39, 40.

In fact, the ALJ's credibility determination did not make clear what testimony he accepted or rejected, or on what basis. The ALJ did not clarify whether he credited plaintiff's testimony that he could stand for 15 to 30 minutes at a time. Nor did the ALJ explain how his implicit finding that plaintiff could sit and stand at intervals throughout a sedentary workday was consistent (or not) with plaintiff's alleged limitations. Rather, the ALJ concluded that, taken as a whole, the medical evidence contradicted plaintiff's testimony to the extent it was inconsistent with the assessed RFC. See AT 40 ("Consideration of the record as a whole . . . reveal[s] that the claimant's allegations of disabling symptoms and limitations are not entirely consistent with and

---

[4] Social Security Ruling 83–10 defines "occasionally" as "occurring very little up to one-third of the time." "[P]eriods of standing or walking should generally total no more than about 2 hours of an 8–hour workday, and sitting should generally total approximately 6 hours of an 8–hour workday." Id.

supported by the medical evidence and other evidence in the record."). In <u>Lambert</u>, the Ninth Circuit held that this type of credibility analysis was legally insufficient. 980 F.3d at 1277-78.

Moreover, assuming the ALJ accepted plaintiff's testimony that he could not sit for long periods, the ALJ should have addressed this limiting factor with the VE. As a court in this district has explained,

> "[A] person who is unable to sit for prolonged periods of time is incapable of engaging in the full range of sedentary work." <u>Auckland [v. Massanari</u>, 257 F.3d 1033,] 1035 [(9th Cir. 2001)] (citing SSR 83–12). However, such a limitation does not necessitate a finding of disability in every case. <u>Martinez v. Heckler</u>, 807 F.2d 771, 774–75 (9th Cir.1986) (affirming the determination that the claimant, who needed to alternate sitting and standing, was not disabled where there existed 3,750 to 4,250 jobs in the greater metropolitan area which the claimant could perform with his limitation). If the claimant is capable of transferring his work skills to jobs in which a person can sit or stand with a degree of choice, the claimant will not be found disabled. <u>Auckland</u>, 257 F.3d at 1036. <u>In circumstances where a claimant is unable to sit for prolonged periods, the services of a vocational expert are required in order to determine whether there are jobs that exist in significant numbers in the national economy that would permit the claimant to sit or stand with the requisite degree of choice. Id. at 1035</u> (citing SSR 83–12); Martinez, 807 F.2d at 774.

<u>Smith v. Astrue</u>, No. CIV S–06–2373 DAD, 2009 WL 928323, at *4 (E.D. Cal. April 6, 2009) (emphasis added); <u>see Lepeltak v. Kijakazi</u>, No. 2:20-cv-01503 CKD, 2022 WL 2954091 (E.D. Cal. July 26, 2022) (remanding because "the ALJ never questioned the VE about whether someone limited to six hours of sitting . . . could perform the job of bookkeeper as generally performed, nor was this issue presented . . . to the VE").

Here, the ALJ did not address plaintiff's alleged sit-stand limitations with the VE, nor their effect on his ability to resume his past sedentary jobs. See AT 82-83 (hearing testimony). In response to a question from plaintiff's attorney, the VE testified that an individual with plaintiff's RFC who also required a sit-stand option—i.e., could sit and stand as needed during the workday—would be "unable to sustain employment." AT 86.

Based on the foregoing[5], the undersigned concludes that the ALJ committed harmful error such that the finding of nondisability is not supported by substantial evidence. See <u>Lambert</u>, 980

---

[5] The court does not reach the remaining claims.

F.3d at 1278 ("Because the ALJ did not provide enough 'reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence,' we cannot treat the error as harmless." (quoting Treichler, 775 F.3d at 1103)).

REMEDY

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler, 775 F.3d at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether plaintiff was disabled during the relevant period. On remand, the ALJ should provide specific, clear, and convincing reasons for discounting any portion(s) of plaintiff's subjective symptom testimony, and question the VE as necessary regarding any assessed sit-stand limitations. The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period, provided that the ALJ's

determination complies with applicable legal standards and is supported by the record as a whole.

Accordingly, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) is granted;

2. The Commissioner's motion for summary judgment (ECF No. 12) is denied; and

3. This matter is remanded for further proceedings consistent with this order.

Dated:  June 9, 2023

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/canady920.ssi.ckd